IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NXP USA, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>MEDIATEK INC., et al.,<br><br>      Defendants. | Case Number: 2:21-cv-00318-JRG<br><br>**JURY TRIAL DEMANDED** |

**NXP USA, INC.'S MOTION TO DISMISS
CERTAIN MEDIATEK AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

11068166

**TABLE OF CONTENTS**

**Page**

I.   Introduction ..........................................................................................................................1

II.  Legal Standard ......................................................................................................................1

III. Legal Analysis ......................................................................................................................3

    A.   MediaTek's Allegations Of Inequitable Conduct Based On Supposed Failure To Disclose Materials To The Patent Office Should Be Dismissed. .....................3

        1.   MediaTek Has Failed To Properly Plead Any Challenge Based On Allegedly Improper Inventorship ................................................................4

        2.   MediaTek Has Failed To Properly Plead Any Challenge Based On An Alleged Failure To Disclose Alleged Prior Art .......................................7

        3.   MediaTek's Analogous Counterclaims Are Similarly Deficient ..............9

        4.   MediaTek's Broad, Unsupported Allegations Based On Other Unenforceability Theories Also Fail ............................................................9

    B.   Allegations Based On Alleged Contractual Obligations ....................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*,
  2018 WL 2604825 (D. Del. June 4, 2018), *enforcement granted*, 2019 WL
  498797 (D. Del. Feb. 8, 2019) ............................................................................................. 2

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 1, 10

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 ......................................................................................................... 2, 5, 8

*Gemcor II, LLC v. Electroimpact Inc.*,
  2012 WL 628199 (D. Kan. Feb. 27, 2012) ....................................................................... 3

*GS Cleantech Corp. v. Adkins Energy LLC*,
  951 F.3d 1310 (Fed. Cir. 2020) ........................................................................................ 2

*SCA Hygiene Prods Aktiebolag v. First Quality Baby Prods, LLC*,
  137 S.Ct. 954 (2017) ...................................................................................................... 11

*Sonos, Inc. v. D&M Holdings Inc.*,
  2016 WL 4249493 (D. Del. Aug. 10, 2016) ..................................................................... 3

**Rules**

Fed. R. Civ. P. 8(a)(1) ............................................................................................................... 1

Fed. R. Civ. P. 9 ........................................................................................................... 1, 2, 3, 5

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 2

I.      Introduction

Plaintiff NXP USA, Inc. ("NXP") filed this patent infringement suit in August 2021. MediaTek asked for and received significant extensions to respond to NXP's complaint (after initially attempting to contest service); it then filed responsive pleadings on November 1, 2021. *See* D.I. 43; D.I. 44 (Answers).  Nearly three months later, on the last day allowed by the Court for amendments to the pleadings, MediaTek amended its answers.  *See* D.I. 96; D.I. 97 (Amended Answers); D.I. 81 at 4 (First Amended Docket Control Order).  These last-minute amendments approximately doubled the size of the pleadings by adding numerous new purported affirmative defenses and counterclaims.

Having reviewed these extensive amendments, NXP now moves to dismiss MediaTek's additions because they fail to meet minimum pleading requirements.

II.     Legal Standard

Affirmative defenses and counterclaims must be pleaded.  Fed. R. Civ. P. 8(a)(1); 8(b)(1)(A); 8(c)(1).  Although "short and plain" language suffices, *id.*, the pleaded defenses and counterclaims must be premised on express allegations sufficient to "raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 444 (2007).  A "formulaic recitation of the elements of a cause of action," for example, "will not do."  *Id.*  Rule 8 requires a party to establish in its pleadings "more than a sheer possibility" that the party may be entitled to relief.  The foregoing is the baseline standard for general pleading.

Rule 9 imposes a ***higher*** substantive bar for pleading certain special issues.  To allege fraud, for example, "a party must state ***with particularity*** the circumstances constituting" the fraud alleged.  Fed. R. Civ. P. 9(b) (emphasis added).

In patent cases, defenses under the doctrine of inequitable conduct are typically premised on allegations of (1) either knowledge of "material information" that has been withheld, or of "falsity" of a material misrepresentation made, and (2) specific intent to deceive the Patent Office by withholding or misrepresenting the information. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327. Because inequitable conduct charges a "specific intent to deceive" the Patent Office with material misrepresentation or omission, allegations thereof are subject to the higher, "with particularity" standard of Rule 9. *See, e.g.*, *GS Cleantech Corp. v. Adkins Energy LLC*, 951 F.3d 1310, 1324-26 (Fed. Cir. 2020). Indeed, the Federal Circuit has held that, to allege inequitable conduct, a pleading must provide "identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before" the Patent Office. *Exergen*, 575 F.3d at 1327. If a defendant fails to "set[] forth the[se] particularized factual bases for the allegation," it fails to satisfy Rule 9—and the defective purported defense or claim should be dismissed. *Id.* at 1327; Fed. R. Civ. P. 12(b)(6).

Although Rule 9 permits knowledge, intent, and "other conditions of a person's mind" to be "alleged generally," Fed. R. Civ. P. 9(b), Federal Circuit precedent requires, in the context of inequitable conduct, that "the pleadings allege ***sufficient underlying facts*** from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen*, 575 F.3d at 1327.

The Rule 9 standard is not limited to allegations of inequitable conduct, even in the patent context. Other defenses premised on alleged fraudulent conduct, too, invoke Rule 9's heightened standard at least for pleading those portions premised on alleged fraud. *See e.g.*, *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, 2018 WL 2604825, at *1 (D. Del. June 4, 2018), *enforcement granted*, 2019 WL 498797 (D. Del. Feb. 8, 2019) ("[A]n ***unclean hands*** defense based on fraud

or misrepresentation must satisfy the pleading requirements of Rule 9(b) . . . ."); *Gemcor II, LLC v. Electroimpact Inc.*, 2012 WL 628199, at *3 (D. Kan. Feb. 27, 2012) ("If Electroimpact's *patent misuse* affirmative defense implicates fraud, then Electroimpact must seek leave to re-plead this affirmative defense with particularity. "); *Sonos, Inc. v. D&M Holdings Inc.*, 2016 WL 4249493, at *5 (D. Del. Aug. 10, 2016), *report and recommendation adopted*, 2016 WL 4581078 (D. Del. Sept. 1, 2016) ("An element of *estoppel* is fraud or misrepresentation, which requires the defense to be pled with particularity under FED. R. CIV. P. 9(b).").

**III.    Legal Analysis**

The affirmative defenses and counterclaims at issue here fall into two general categories for purposes of this motion: (a) defenses and counterclaims premised on alleged inequitable conduct, and (b) defenses and counterclaims premised on alleged breach of contractual obligations. MediaTek has failed to plead any of these defenses or counterclaims in accordance with the applicable standard, and NXP for that reason asks the Court to dismiss them.

    **A.     MediaTek's Allegations Of Inequitable Conduct Based On Supposed Failure To Disclose Materials To The Patent Office Should Be Dismissed.**

MediaTek's allegations of inequitable conduct fail to provide the particularity required by Rule 9. MediaTek purports to accuse *every single named inventor of NXP's asserted patents* of fraud—indeed, of supposed knowing intent to deceive the federal government—without alleging even a single detail about how any of these individuals supposedly foisted a fraud upon the Patent Office. If there were reason to believe that any deception took place in connection with the prosecution of the patents asserted by NXP in this matter against MediaTek, MediaTek would have pleaded specific allegations to that effect. MediaTek did not do so.

The minimal allegations MediaTek actually pleaded simply multiply and bootstrap MediaTek's run-of-the-mill statutory invalidity defenses (which MediaTek pleaded separately)

into the realm of the inequitable conduct doctrine. Whether or not MediaTek can prove its run-of-the-mill statutory defenses is an open question for the Court and a jury (and NXP denies the same); but MediaTek has failed even to *plead* inequitable conduct. As discussed further below, defenses premised on the same should be dismissed at least for failure to state a claim.

### 1. MediaTek Has Failed To Properly Plead Any Challenge Based On Allegedly Improper Inventorship

MediaTek's fourth, seventh, and tenth affirmative defenses attempt to plead "inequitable conduct" in the prosecution of each of NXP's asserted patents. In asserting these defenses, MediaTek alleges that "individuals acting on behalf of the applicant" supposedly "knew about" and allegedly "intentionally failed to disclose" to the Patent Office documents that show "the inventorship listed for the patent was incorrect." *See, e.g.*, D.I. 96 at ¶¶ 120-123 ('780 Patent); ¶¶ 133-136 ('518 Patent); ¶¶ 149-152 ('158 Patent); *see also, e.g.*, D.I. 97 at ¶¶ 120-123; ¶¶ 133-136; ¶¶ 149-152.[1] These allegations are deficient for multiple reasons.

First, MediaTek fails to allege anything that could reasonably give rise to an inference that any individual had the knowledge or specific intent that is ***unequivocally*** required of a sustainable inequitable conduct defense. For example, MediaTek's fourth affirmative defense alleges that certain "individuals," supposedly including, but not limited to, all of the named inventors of the '780 Patent, "knew about" a document MediaTek references as the "Hart Amendment." DI. 96 at ¶ 121. MediaTek generally alleges that the aforementioned open-ended

---

[1] The movant has attempted to provide accurate paragraph citations to each pleading filed by the defendants. Nevertheless, where no express citation is provided, the movant intends to include the amended pleadings of both MediaTek Inc. (D.I. 96) and MediaTek USA Inc (D.I. 97), at least where those pleadings are not materially different from what is discussed in this motion.

class of individuals "intentionally failed to disclose" that document to the Patent Office. MediaTek offers no more substance.

These assertions are merely a bare recitation of generic elements of an inequitable conduct defense: supposed knowing and intentional withholding. MediaTek fails to allege any actual (alleged) facts that could actually support an inference that, any particular inventor, or any other particular "individual[] acting on behalf of the applicant," could have known about the "Hart Amendment"—let alone that any such actor knew about the "Hart Amendment" *and* intentionally chose not to disclose the document to the Patent Office. MediaTek has literally failed to carry its pleading burden.

Identifying an alleged prior-art document together with an open-ended class of individuals copied from the cover of a patent does not add enough to black-letter law to warrant an accusation of fraud upon the Patent Office. Under Rule 9, a pleading of this kind of conduct "***must*** include at least sufficient allegations of ***underlying facts*** from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material representation, and (2) withheld or misrepresented this information with a specific intent to deceive" the Patent Office. *Exergen*, 575 F.3d at 1328-29 (emphasis added). No such underlying facts are alleged here.

Second, MediaTek fails to include any allegations at all regarding any contribution that the supposedly omitted inventors made to the inventions claimed. For example, with respect to the "Hart Amendment" that is the subject of the fourth affirmative defense, MediaTek alleges that the document "shows the inventorship listed for the patent was incorrect." D.I. 96, at ¶ 122; D.I. 97 at ¶ 122. That conclusory legal assertion lacks any mention of underlying facts that could

support it if those facts were proven.  It fails under the weight of the allegations purportedly made.

The missing specificity identified above is not provided in other parts of the pleading. For example, the fourth affirmative defense purports to include MediaTek's discussion of the "Hart Amendment" in connection with MediaTek's *third* affirmative defense,[2] wherein MediaTek asserts that "[t]he Hart Amendment discloses the difference between the prior art and the subject matter recited in the claims of the '780 Patent by describing the selection of $N_{ES}$ to ensure an integer value for $N_{DBPS}/N_{ES}$, which allows the use of previously excluded MCS indices, an element of all the claims of the '780 Patent."  D.I. 96, at ¶ 117; D.I. 97. at ¶ 117.  But MediaTek neither cites to particular portions of the document nor any other fact at all that could underlie its bare legal conclusion that the document "discloses the difference between the prior art and the subject matter recited in the claims."  MediaTek fails to quote from the document or even to incorporate the document into (or attach it to) its pleading.

MediaTek's seventh and tenth affirmative defenses allege similarly pleaded inequitable conduct based on alleged failure to name inventors of the other two asserted patents.  These defenses are deficient for analogous reasons.  For example, the seventh affirmative defense pertains to a document MediaTek calls the "Porat 1353 IEEE Technical Submission."  D.I. 96. at ¶¶ 133-136; D.I. 97 at ¶¶ 133-136.  As with the "Hart Amendment" discussed above, however, MediaTek fails to provide any allegation of fact that could support a reasonable inference of the kind of knowledge or intent required to sustain an inequitable conduct claim.  The failure is not

---

[2] For each of the "inequitable conduct" affirmative defenses premised on alleged inventors who were supposedly knowingly concealed from the Patent Office, MediaTek has also pleaded a statutory improper inventorship defense:  see the third, sixth, and ninth affirmative defenses.  This motion does not seek to dismiss the statutory inventorship defenses.

cured with MediaTek's pleading regarding the statute-based sixth affirmative defense alleging incorrectly named inventors upon that same "Porat 1353 IEEE Technical Submission" document, which pleading fails to provide information about supposed knowledge or intent, and fails to plead any facts at all supporting a reasonable inference that Mr. Porat might have somehow contributed to the inventive subject matter.

Similarly, the tenth affirmative defense is based on documents that MediaTek calls the "Merlin 1344 IEEE Technical Submission" and the "Lan 0949 IEEE Technical Submission." Here, too, MediaTek fails to allege any facts giving rise to an inference of knowledge or intent. . That information is also not found in MediaTek's allegations of incorrectly named inventors according to statute, which are based on those same documents. *See, e.g.*, D.I. 96, at ¶¶ 140-148; D.I. 97, at ¶¶ 140-148.

### 2.  MediaTek Has Failed To Properly Plead Any Challenge Based On An Alleged Failure To Disclose Alleged Prior Art

MediaTek recites affirmative defenses of inequitable conduct based on alleged failure to disclose the same documents discussed above as supposed material prior art. These allegations are found in in the fifth, eighth, and eleventh affirmative defenses in MediaTek's amended pleadings. They merely attempt to multiply MediaTek's statutory defenses without providing any additional substance, and should be dismissed. Generally, these defenses fail under the applicable pleading standard for analogous reasons discussed above in connection with the fourth, seventh, and tenth affirmative defenses of inequitable conduct.

For example, MediaTek fails to include in its pleading any factual allegations that give rise to any inference that any of the relevant "individuals acting on the behalf of the applicant" knew about or intentionally withheld the relevant materials. No such knowledge or intent is indicated, other than a generic assertion that the same was in some unspecified way present.

This genericity is not permitted of a pleading purporting to allege fraud, such as alleged inequitable conduct.

Further, MediaTek fails to explain why the alleged prior art is "material," other than to aver generally that the alleged prior art is "not cumulative of the prior art considered during" the prosecution or that "the prior art considered . . . does not teach" (or similar) a limitation. *See, e.g.*, D.I. 96, at ¶¶ 126 139, 155. In fact, MediaTek fails to identify "the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record," or any claim limitations at all. *Exergen*, 575 F.3d at 1329. Yet "[s]uch allegations are necessary to explain both '***why***' the withheld information is material and not cumulative, and '***how***' an examiner would have used this information in assessing the patentability of the claims." *Id.* at 1229-30. MediaTek fails to provide any explanation of this "why" or "how" in its affirmative defenses of inequitable conduct based on alleged intentional failure to disclose material prior art that was material for reasons other than supposed evidence of inventorship.[3]

If permitted, this type of barebones pleading would allow any defendant to convert nearly ***any*** inventorship, anticipation, or obviousness defense into multiple affirmative defenses and counterclaims of inequitable conduct—in disregard of the Federal Circuit's caution that inequitable conduct should not "devolve into a magic incantation to be asserted against every patentee." *Exergen*, 575 F.3d at 1331 (quotation marks omitted). For example, the prior art that underlies anticipation and obviousness defenses is, in the typical case, publicly available and authored at least in part by someone other than a named inventor. Permitting MediaTek's

---

[3] Although MediaTek alleges in its fifth affirmative defense that the document there-in-question discusses "selecting $N_{ES}$ to ensure an integer value for $N_{DBPS}/N_{ES}$ to allow the use of previously excluded MCS indices, an element of all the claims of the '780 Patent," that general language neither identifies claim elements nor points to any actual discussion in the document.

11068166

- 8 -

allegations to stand would allow just about any ordinary anticipation or obviousness defense to rise to the level of inequitable conduct with general, unsubstantiated accusations that the documents were known to the applicants and that the applicants knowingly withheld or misrepresented them.  Indeed, MediaTek's approach has resulted in MediaTek accusing every single named inventor on NXP's asserted patents of multiples instances of fraud—without a single substantiating factual allegation.

### 3. MediaTek's Analogous Counterclaims Are Similarly Deficient

MediaTek relies on similar barebones allegations to allege inequitable conduct in its eighth, ninth, eleventh, twelfth, fourteenth, and fifteenth counterclaims, largely mirroring the substance of the barebones affirmative defenses of inequitable conduct discussed above.  These counterclaims should be dismissed for the same reasons discussed above in connection with the affirmative defenses they mirror.

### 4. MediaTek's Broad, Unsupported Allegations Based On Other Unenforceability Theories Also Fail

To the extent that MediaTek's allegations of unenforceability, estoppel, or other affirmative defenses depend on supposed underlying fraudulent acts, those portions should be dismissed, as well.

For example, MediaTek's thirteenth and fourteenth affirmative defenses reference various kinds of estoppels as well as "patent misuse," "unfair competition," and "unclean hands," among a laundry list of doctrines.  MediaTek fails to plead any underlying acts tied to the legal requirements of any of these doctrines, and NXP is thus left to guess at what conduct MediaTek intends to sweep within these defenses.  The Court should dismiss these defenses to the extent they rely on allegedly fraudulent activity, given that no such subject matter was particularly pleaded.

### B. Allegations Based On Alleged Contractual Obligations

MediaTek's twelfth, thirteenth, fourteenth, and fifteenth affirmative defenses assume alleged obligations that NXP incurred as a result of alleged activities in connection with the IEEE organization—but MediaTek fails to sufficiently allege standing to hold NXP to those supposed obligations as a non-party to any relevant contract, and, even more fundamentally, never actually affirmatively alleges that these obligations even exist.

First, MediaTek's allegations of standing to bring suit as a third-party beneficiary to a contract are limited to the assertion that "[a]s an intended third-party beneficiary to these contractual obligations, MediaTek USA has standing to assert this breach." *See, e.g.*, D.I. 96 at ¶ 166.  This allegation fails even under *Twombly*, which required MediaTek to establish in its pleadings "more than a sheer possibility" that the MediaTek may be entitled to relief.  The contracts are not attached to MediaTek's pleading.

Second, MediaTek's discussion of NXP's alleged obligations vis-à-vis the IEEE depends on patents meeting the IEEE's definition of the term "Essential Patent Claim." *See, e.g.*, D.I. 96 at ¶¶ 159-166.  But MediaTek does not allege—even in a barebones fashion—that any of NXP's asserted patent claims in fact meets the definition of "Essential Patent Claim" or falls within the scope of any licensing obligations.  MediaTek concedes this in its pleading: these affirmative defenses are only pleaded "***[t]o the extent that NXP alleges***, directly or by implication, that any claims . . . are or may become essential to certain technical standards" (or similar language). *See, e.g.*, D.I. 96 at ¶¶ 157, 165, 166, 170, 174, 175, 176, 180.  To the extent that these affirmative defenses purport to stand in the absence of NXP's own allegations that any asserted claim meets the pleaded definition of Essential Patent Claim, they should be dismissed.  Further, to the extent that MediaTek's reference to the possibility that patent claims "are or may become

essential to certain technical standards," refers to anything other than meeting the "Essential Patent Claim" definition discussed in connection with the specific standards itemized in MediaTek's complaint, the twelfth, thirteenth, fourteenth, and fifteenth affirmative defenses should be dismissed.

Finally, to the extent that MediaTek's affirmative defenses attempt to plead laches in this patent infringement case, *see, e.g.*, D.I. 86, at ¶¶ 168, 172, the defenses should be dismissed because laches is not a defense to patent infringement claims.  *See SCA Hygiene Prods Aktiebolag v. First Quality Baby Prods, LLC*, 137 S.Ct. 954, 967 (2017) ("Laches cannot be interposed as a defense against damages where the infringement occurred within the period prescribed by § 286.").

Because MediaTek has failed to meet minimum pleading standards, the affirmative defenses and counterclaims discussed above should be dismissed.

| | |
|---|---|
| Dated: February 10, 2022 | By:     */s/ Dominik Slusarczyk* |

                                                  Morgan Chu
California Bar No. 70446
Benjamin W. Hattenbach
California Bar No. 186455
Dominik Slusarczyk
California Bar No. 287084
Jordan Nafekh
California Bar No. 480324
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile:  (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
dslusarczyk@irell.com
jnafekh@irell.com

*Of Counsel:*

Andrea L. Fair
Texas State Bar No. 24078488
E-mail: andrea@wsfirm.com
Charles Everingham IV
Texas State Bar No. 00787447
E-mail: ce@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

*Counsel for Plaintiff NXP USA INC.*